Smith, C. J.
By the pleadings (the plaintiff not demurring to the plea of nil debet') it seems to be admitted that this record is not to have the same effect as a record of a judgment of a court of competent jurisdiction in this State, or as the same record would have if shown in pleading in Vermont, (b) In either of these cases, the record would conclude the question of jurisdiction, as well as every other question.
We are called upon to carry into effect, in this State, a judgment rendered against one of our citizens in favor of another in the State of Vermont. The defendant appeared in that suit, and defended, and the record discloses no facts from which we are warranted in supposing that the merits were not fairly tried. Still, if the Court had no jurisdiction, and this question is now open to us, the record must be rejected, and the plaintiff must resort to the original cause of action, if he ever had any such which could be enforced in this State.
I take the law of nations to be this: that citizens of New Hampshire are exempt from any jurisdiction, civil or criminal, to be exercised by the courts of Vermont; they are amenable only to the courts of New Hampshire.
If a citizen of Vermont is injured by, or has a demand upon, a citizen of New Hampshire, he must apply for redress to the courts of New Hampshire, which are equally open and supposed to be indifferent to foreigner or native ; so, vice versd (Collect. Jurid. 102), if a citizen here is wronged by a person living in Vermont, he ought to apply for redress in the Vermont courts of justice.
The courts of Vermont are at least as much limited in the exercise of their jurisdiction as the legislature of Vermont; the one legislates for the territory, and the other administers *401 justice to its citizens and subjects. The law of nations forms a part of the law of Vermont, and of this State, and every independent State. Wo. El. Jur. 158. By that law the courts of one State are prohibited from entertaining suits against the citizens of any other independent State. Nations are like individuals in a state of nature. Vattel, p. 2. One cannot bind the other by its acts, legislative, executive, or judicial. It cannot coerce the citizens of another independent State.
But tire rule which has been mentioned applies only where the citizens and subjects of each State remain within their territorial limits. If the citizen of one State go into the territory of another independent State, and there commit an offence against the State, or do an injury to any of its citizens, he is punishable and answerable in the'same manner as if he were a subject of such State, (a) The permission to enter the territory of an independent State is upon this tacit condition, that he be subject to the laws. Vattel, B. 2, § 101, pp. 153, 154, 156, 94, 108, 109, &c. (b) The laws govern all persons within the State, whether citizens or foreigners. If any dispute arises between such foreigner and a citizen, it must be terminated by the judge of the place, and also according to the laws of the place. Vattel, B. 2, § 103. When a person voluntarily goes into another State, he submits himself to the laws of such State, and to be judged by the courts of such State. He may be arrested for offences against the State, and tried. So he may be sued by any one who has any just claim upon him ; and the judge of the place where he is found has jurisdiction, (c) But if he be not proceeded against whilst *402 within the State, but be suffered to return to his own State, then the rule of the law of nations is, that for any civil injury the party must be prosecuted before his judge, who alone has a right to constrain or condemn him. His judge is the judge of the place where he has his domicile ; the judge of the State of which he is a citizen.
No independent State would tolerate the idea that one of its citizens or subjects should be coerced by a foreign tribunal whilst he remained at home.
The service here of process issuing from a foreign State is a contempt of the laws and sovereignty of this State; and it would be a most impudent thing to call on our courts to enforce the judgment or decree of a foreign State against one of our citizens.
In ease one of our citizens shall have committed a crime in another State, it may be proper to surrender him on application of the supreme power of such State, that he may be tried and punished where the offence was committed. But he cannot be forcibly taken from this State; or tried in the State where the offence was committed, till he is found or brought there, (a) The person of the offender — one who has done a civil injury — being found in any State, gives the courts of that State jurisdiction over him for all crimes committed there, and all civil injuries which were committed there, or which may be prosecuted anywhere, in any place ; such as, according to the usages of nations, follow the person. Here the jurisdiction of the cause is acquired by the person coming within the State; by his residence there for however short a time. (b)
*403 But, by the law of nations, it is apprehended, the courts of a State sometimes acquire jurisdiction of a cause in respect of property found or lawfully brought within its limits. The jurisdiction of courts of admiralty to judge of and condemn goods captured from an enemy during a war, or lawfully seized on the high seas, or on land under certain circumstances, depends on this principle. The court of the nation to which the captor belongs has exclusive jurisdiction. Coll. Jurid. 100.
So it is clear that all disputes concerning lands in any State, though owned by the subject of another independent State, can only be decided in the State where the lands lie ; and so as to all rights annexed to lands. No sovereign State will permit others to intermeddle with what belongs to its territory.
He who purchases lands in another State may well be presumed to have agreed that the laws of the State where they are situated shall govern as to the transfer of them, either by the rules of descent, or by instruments executed by the owner, or by involuntary transfer, such as by forfeiture, or extent, or levy of execution, &c. The courts of the State where the lands are situated have jurisdiction in'every thing relating to such lands, and their decisions are to be respected everywhere else. ,
And, though I find little in the law of nations on the subject, I see no reason why the courts of the State should not have jurisdiction over movables, or personal property, found in the limits, as well as over the person of the owner, when the latter is a citizen of another State; proceeding in such case according to the municipal laws of the State where the property is. I do not speak of the rule or law by which heirs, &c. shall succeed to such personal property on the death of the owner, or how testaments shall be made; but of the municipal regulations of some States which allow such estate to be taken for the debt of the owner. Yattel, B. 2, §§ 103-110. I see nothing in the law of nations against such regulations. But then the jurisdiction should not be exercised beyond the property which conferred the jurisdiction.
*404 The respect which is due to judgments, sentences, and decrees of courts in a foreign State, by the law of nations, seems to be the same which is due to those of our own courts. Hence the decree of an admiralty court abroad is equally conclusive with decrees of our admiralty courts. Indeed, both courts proceed by the same rule, are governed by the same law, — the maritime law of nations : Coll. Jurid. 100; which is the universal law of nations, except where treaties alter it.
The same comity is not extended to judgments or decrees which may be founded on the municipal laws of the State in which they are pronounced. Independent States do not choose to adopt such decisions without examination. These laws and regulations may be unjust, partial to citizens, and against foreigners ; they may operate injustice to our citizens, whom we are bound to protect; they may be, and the decisions of courts founded on them, just cause of complaint against the supreme power of the State where rendered. To adopt them is not merely saying that the courts have decided correctly on the law, but it is approbating the law itself. Wherever, then, the court may have proceeded on municipal law, the rule is, that the judgments are not conclusive evidence of debt, but primd facie evidence only. The proceedings have not the conclusive quality which is annexed to the records or proceedings of our own courts, where we approve both of the rule and of the judges who interpret and apply it. A foreign judgment may be impeached ; defendant may show that it is unjust, or that it was irregularly or unduly obtained. Doug. 5, n.
I think it cannot be doubted that the framers of the Confederation [1] meant something when it was declared, as in the fourth article, “ that full faith and credit shall be given in each of the States to the records, acts, and judicial proceedings of the courts and magistrates of every other State.” Some credit beyond what was given to foreign judgments was intended. The paragraph immediately preceding provides that a person charged in one State with crimes, fleeing from justice, shall be delivered up by the State in which he may be *405 found, that he may be tried in the State having jurisdiction of the offence, (a)
In the fourth article, § 1, of the Constitution of the United States, the words are, “ Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State ; and the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof.” Congress have accordingly declared that records and judicial proceedings, authenticated as the act requires, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are, or shall be, taken. Vol. 1, 48.
Now this clause in the Constitution was entirely without use, object, or end, unless it gave to_the judicial proceedings of the several States more faith and credit than they then had (before 1781). They were then primd fade evidence of debt, and no more. They were conclusive till impeached ; but they might be impeached. Doug. Appendix, 7. Domestic records could not be impeached ; more faith and credit was given to them.
When it is said, therefore, that full faith and credit shall be given, in each State, to the judicial proceedings of the other States, it gives them all the credit they could possibly claim. But still they are judicial proceedings of another State ; and, except so far as the Constitution of the United States operates to consolidate the States into one body politic, the States remain independent sovereignties as it respects each other.
The ground and reason for this faith and credit beyond what is given to foreign States, doubtless, was the similarity of laws and judicial proceedings in the several States which compose the Union. The municipal laws of all were thought tobe nearly the same; the administration of justice similar; and it was no doubt considered that the laws and courts of the United States would tend more and more towards a more perfect similarity in the municipal laws and judicial proceedings of *406 the several States. Complaints were not apprehended on the score of unjust, partial laws of the legislature; they were expressly restrained by the Constitution from making many such ; nor any jealous apprehension of partiality of judges in administering the municipal laws. But still it is easy to imagine that a sovereign State would not incline to hold itself bound by the public acts and judicial proceedings of the other States in the Union, on matters which concern their sovereignty. Congress may safely be trusted to legislate for the Union; they are chosen by all. The courts of the United States may be safely trusted to administer the laws of the Union. But, as far as our claim to independence and sovereignty is concerned, there is no ground for confidence in the legislatures of the several States, or in their courts.
My exposition of the clause in the Constitution, then, is, that the judicial proceedings of every other State in the Union are entitled to full faith and credit here (as much as at home) ; are to be considered a faithful interpretation and application of the law; and so conclusive to every purpose, except so far as the sovereignty of the States is concerned. We will not concede, in the credit we give to their acts, the right to try and condemn our citizens. We still retain the right of interpreting for ourselves the law of nations on the question of jurisdiction, (a) Where the law of nations allows the Vermont court, for example, to try one of our citizens, or to entertain a suit against him or his property, we will be bound by the decision. We are willing to admit that the court who try has jurisdiction, if any court of the State has, (they must know best) ; that the rule of municipal law by which they try is just, and the decision of the court correct. We will call none of these things in question. But, if they assume jurisdiction over one of our citizens, where, by the law of nations, *407 they have none, we will consider the proceedings as void; we will not suffer our sovereignty to depend on a decision of any State, an equal, but not superior, to ourselves, (a)
To put a case : suppose a judgment rendered against one of our citizens by a court in Massachusetts, defendant not having been found in Massachusetts, nor any property of his within that State, but that the suit was, in every other respect, prosecuted in due and regular manner, the decision just, and the process served on defendant a reasonable time before trial. No one will suppose that his chance for a just decision would not be as good there as at home ; and yet the judgment would be a nullity, merely because the Massachusetts court had no jurisdiction over one of our citizens. Full faith and credit would, in that case, be given to the Massachusetts record, as far as it went. By the record itself, it would appear that the court had no jurisdiction. Full faith and credit is given to the record of the judge of probate, in the county of Hillsborough, appointing Burnham administrator of Starret, deceased; but, Starret being alive, the record of his death is a nullity.[1]
If the law of nations is a part of the law of Vermont, and if the account I have given of it is correct, and if the Constitution is as I have stated it, we shall, I think, meet with little difficulty in deciding the questions before us.
It appears from the record of the judgment which we are now called on to enforce, that defendant was not found in Vermont, so as to give jurisdiction to the Vermont court. (b) It is admitted he was, at the time (and the record shows the *408 same thing), an inhabitant and resident in this State. If, then, the Vermont court had jurisdiction of the suit, it must have been either, (1st) because the defendant’s estate was attached, or, (2d) because defendant appeared and defended the suit.
1. In Wheeler v. Peck, 11 Manuscript Reports, 109, both parties lived, and had always lived, in Massachusetts, and the cause of action accrued there. The suit was commenced by-attachment of defendant’s lands in this county. See that ease, pp. 109-118. It has always been the practice to sustain suits so commenced in this State; and, for the reasons which have been stated, I am of opinion that the jurisdiction is warranted by the law of nations. But, then, I think the judgment is no further binding than the property attached. It can be used for no other purpose than that of making a title to the land attached, or, if the property attached was personal, for the purpose of obtaining satisfaction to the amount in value of such estate. It is a proceeding in rem. The property gives the jurisdiction, and marks and limits the extent of that jurisdiction. It would border on absurdity to say that, because A. B., who lives in Georgia, happens to be the owner of property to the value of $100 in this State, this should subject the owner to a suit to any amount; indeed, give the citizens of every State in the Union the right of maintaining actions against him in our courts. This proceeding by attachment does not exist in England in modern times. There, however, a foreigner may be sued, or rather his creditor may obtain satisfaction out of his property, by a proceeding called foreign attachment. His debtor, or person having his goods in his possession, within the jurisdiction of the court, may be summoned, and the debtor’s goods condemned to the creditor suing; but no judgment can be obtained which binds beyond the value so attached, (a) *409 Onr practice of attaching goods or lands of a foreigner is an extension of the law of foreign attachment. So far, tbe law *410 is reasonable; but it would be unreasonable to hold the owner liable beyond the property attached, where jurisdiction over the person and suit is acquired merely by the attachment.
It. is true, our statute does not distinguish between the cases where the owner of the property attached is a citizen or foreigner. But there is a clear distinction in principle, and clearly a judgment under the statute would not be binding on foreigners. I have no doubt that it is competent now for us to consider the judgment now sued as having the force only of a judgment in foreign attachment. It is void for every other purpose, (a) It is not like a foreign judgment, primé facie evidence, good till impeached. It is void, because the court had no jurisdiction except against the estate attached. (b)
*411 2. The next question is, whether the objection arising on the score of jurisdiction is waived by appearance of defendant in tbe suit in Vermont.
It is a general rule that the court must have jurisdiction at the commencement of the suit. Appearance cures defects of service, errors and defects in process. It is a waiver of certain exceptions. But does it confer jurisdiction where the court had none before ? When this was commenced, it was a proceeding in rem, or in the nature of such a proceeding. Does appearance turn this proceeding into a suit against the person ? This is not the case in suits in the admiralty and exchequer in rem ; except where, perhaps, the court may call the parties in a transaction before them, in which case they may proceed in personam. In Jackson v. Jackson, 1 Johns. 424, the action was debt on a judgment of the Vermont court, in a suit for alimony in a divorce cause. The defendant appeared by attorney, in the suit (see Woodworth in reply, and Spencer, J.), and made his defence; and yet it was held that the decree or judgment was a nullity. I quote this case, merely to show that appearance and defence does not confer jurisdiction, where the court had it not before.
*412 Does the act of constituting an attorney, and defending this proceeding in Vermont, in the nature of a suit in rem, i. e. defending defendant’s land attached, give jurisdiction against his person; does he thereby submit himself, as well as his land, to the disposal of the court.
It may be said, though appearance in a trustee suit does not give jurisdiction, yet here is a suit against defendant directly, and he appears, &c. Answer: We regard this as a suit in rem; it may be otherwise in Vermont; in every other State it is a suit against the land attached. Molony v. Gibbons, 2 Camp. 502, only shows that the record was primá facie evidence of jurisdiction, and that the appearance was regular ; just as here we presume 0. Marsh was attorney for Ela, and appeared. We cannot presume Ela was within the jurisdiction of the Vermont court; for the record states the contrary; and the parties agree, to make truth doubly true, that the record is true.
It may be said, appearance in foreign attachment in England gives jurisdiction, (a) and the suit goes on against the person. If this were admitted, it would not apply. Appearance here does not discharge the attachment; the suit goes on as before. The attachment is not here to compel an appearance. The appearance does not change the nature of the action. It may be that it does in England. (b)
*413 Have we jurisdiction in this cause in respect of the subject-matter ?
On the facts stated in this declaration, could plaintiff have maintained an action in this State, when he sued in Vermont? Could a court in New Hampshire entertain a suit to recover a penalty incurred by the violation of a penal law in Vermont? (a)
It is clear, no prosecution could be maintained in this State for crimes (offences) committed in Vermont, though by one of our citizens, and where another citizen of this State should be the party more immediately injured thereby. It belongs to the sovereign authority of every independent State to punish all crimes committed within its territory. (b) They are injuries done to the State. The individual sufferer is not regarded. The State is the party injured. The penal laws of one State cannot be regarded or enforced in another State, though another State or its subjects may be injured thereby. They must resort for redress to the courts of the State in which the offence was committed.
Though Bryant was the party grieved, yet he does not sue as such. Any other [?] citizen of Vermont might (it is presumed) have sued. He sues qui tarn; (c) it is a popular action. That a portion of the penalty belongs to him does not alter the case. An indictment would have lain, doubtless, for the whole, to the use of the State. This proportion is given him by the law of Vermont, to stimulate him to prosecute an offender against the penal law of that State, (d)
*414 An action might doubtless be maintained in this State to recover back the usury. Taking the 1363.84 was an injury done to Bryant, and, in a civil point of view, to him alone; no one else could sue for it. It is no other way material in the action in Vermont than as it serves to measure the penalty to be recovered. The same penalty might, by the Vermont statute, have been given for taking one cent under an usurious contract.
If a suit on these facts could not have been maintained in this State, on the ground that we cannot enforce against one of our citizens, or any other, a penal law of Vermont; then, unless the ground is changed by the matter having passed into judgment in Vermont, and so become a debt, we cannot interfere. Supposing no such change, we are called upon to give judgment against a citizen of this State for an injury done by him to the State of Vermont.
For some purposes the cause of action is changed. The remedy may be different; when the matter has passed into judgment, it has become a debt. The defendant is precluded from entering into the merits. It must now be -taken for granted that the offence was committed; and the judgment may be enforced like every other judgment, (a) But, though the form of the action may be changed, the purpose, intent, sole object of this suit, is to punish Ela for violating a Vermont law. (b) Suppose a fine inflicted for a crime committed in Vermont. Debt would lie in Vermont. Would it in this State ? Is there any difference in this respect between a *415 pecuniary mulct and stripes ? May not our court inflict tbe one as well as the other ?
In this view of the case, the objection is to our jurisdiction, not the jurisdiction of the Vermont court.
Can defendant take advantage of this defect of jurisdiction, if well founded, under this plea ? (a)
He could, of a want of jurisdiction in the Vermont court. But if they had jurisdiction, and we none, must not this be pleaded ? Does he not admit our jurisdiction by this plea ? (b) But suppose an indictment here for offence against Vermont law. Would not the court be bound, under the general issue, to dismiss the suit, when they discover the cause of complaint ? Suppose it stated in indictment — dismiss ex offieio — quash. If stated committed in New Hampshire, and proof in Vermont, direct acquittal by jury. Or, if after-pleadings show the fact, would not the court be bound to give the proper judgment, — that defendant go quit ?
Qurnre, whether Constitution United States affects this question. 11 Maimscript Reports, 117k
IluCAPITUI.ATION.[1]
1. The Vermont court had no jurisdiction over the defendant. No suit could be commenced against him in Vermont, on personal notice served in New Hampshire. He must be inhabitant or resident in Vermont, or the process served on him there.
Jurisdiction is acquired by attachment of land. But, where *416 tbe court have otherwise no jurisdiction, and have it only on account of the land, the jurisdiction is only to proceed against the land. Like debt for. att. [judgment in foreign attachment?], this is tobe regarded here by the law of nations, which is the law which, and which only, applies, as a judgment against the land.
The appearance in Vermont does not change the nature of the suit. . . . This was not a personal suit, but in rem.
2. If Vermont court had jurisdiction over the defendant, and this is a good judgment against him in Vermont, yet, in respect to the subject-matter, it cannot be enforced here.
It is to punish defendant for an offence against the State of Vermont.
Result.
1. Vermont court had no jurisdiction over the defendant to render a judgment for any other purpose than as affects the attachment. The appearance does not confer any jurisdiction beyond what the nature of the suit allows. If the suit had been of a nature to confer complete jurisdiction, the appearance might have cured defects in process, &c.; but the suit, in its nature, was in rem, and appearance does not change its nature. Appearance may [confer] jurisdiction in a direct suit against him, but this [is], in effect, against land.
2. This court has no jurisdiction of the suit, on account of the subject-matter or cause, which is to enforce a Vermont penal statute. When this court is called upon to carry into effect a judgment where they would have had no jurisdiction in the action for the original cause, they may look into the grounds of that judgment.
Judgment on the verdict,[1]

 Supposing the common law of England to have been adopted in Vermont. It is believed to have been adopted in every State in the Union.

 Wo. El. Jur. 111. When a stranger sojourns in another country, it is always tacitly implied that he be subject to the municipal laws where he resides, amenable to the courts of justice, and submissive to their sentence.
See Yattel, B. 1, §§ 4, 17, 158-176, 212, &c., 232.

 The case of ambassadors is an exception to the general rule. Vattel, B. 4, § 110, p. 160, vol. 2; Wo. El. Jur. 118.

 It belongs to every sovereign State to exercise justice in all parts within its territory, to take cognizance of the crimes committed and civil *402 injuries arising within it. Vattel, B. 2, § 84. Other nations are bound to respect this right; even the State to which the defendants belong.
Every thing done by the judge of the place, within the extent of his power, is binding everywhere. Vattel, B. 2, § 85 .

 He cannot be punished elsewhere than in the place where the crime was committed. Vattel, B. 1, §§ 232, 233.

V) Perhaps there is a distinction of this sort, — that a person is always liable to be sued for civil injuries, and on contracts in his own country or the place of his domicile; hut that he is ohly liable to he sued where he is, or is found, — out of his own country, — for some matter there [?] then (suddenly) arising. Vattel, vol. 1, p. 154, B. 2, § 103.

 Articles of Confederation.; adopted in Congress, July 9, 1778 ; ratified and carried into effect, March 1, 1781.

 Suppose this latter clause omitted. In construction, the sense would ho the same.

 Jurisdiction, strictly taken, means the court of the State which has jurisdiction of a particular cause, or class of causes, and this depends on the municipal laws of the State; and in nothing do States differ more than in the constitution of their courts, and distribution of causes among them. But here the word “jurisdiction ” is used in a larger sense, — whether' any court of the State has jurisdiction or cognizance of the cause on account of the parties, or the causa of action, by the law of nations.

 The courts of tlie State where our citizen is found may be as competent to decide the question of jurisdiction among their own courts, and the merits of the cause, as our courts; there is no room for jealousy. But, when the question is whether our citizen is amenable at all, it is then a question between independent sovereigns, on which to yield the power of judging is to yield the sovereignty. Of two equals, one cannot be the judge of the other.

If) If defendant had been so found, I am of opinion that the court in Vermont would, in that case, have had jurisdiction. The doctrine was so laid down in Wheeler v. Peck, in this county, S. C. May Term, 1808 (11 Manuscript Reports, 109).

 See Extract from Manuscript Treatise on Probate Law, post.

 The property attached is condemned. „The proceeding is in rem.
Phelps et al. v. Holker et al., 1 Dall. 261. It was rightly decided that a judgment obtained in a foreign attachment in a sister State is not conclusive evidence of the debt in an action between the same parties in andther State. This principle cannot be controverted. It has the entire *409 approbation of all the judges in Massachusetts. Bissell v. Briggs, 9 Mass. 464. It is a little remarkable, however, that the case in which this was decided in Pennsylvania, Phelps v. Holker, was not a foreign attachment, though it was so represented to the court, and so considered by Skwaxl, C. J., in Massachusetts, and Livingston, J., in New York. “The sheriff attached one blanket, shown to him as the reputed property of the defendants.” I presume, if the mistake had been discovered, the decision would have been the same. What is there to_distinguish it in principle? This “ reputed ” blanket, unfortunate blanket, of Holker, who was neither an inhabitant nor resident in Massachusetts, conferred the jurisdiction, i. e. all the Massachusetts courts had over Holker any more than over the Governor of Pennsylvania. Why should the judgment extend beyond the thing attached, which gave the jurisdiction? This is the reasoning of McKean, C. J., and has never yet been contradicted by any judge.
In Kilburn v. Woodworth, 5 Johns. 37, which w7as the case of a person who had himself left Massachusetts five or six months, and settled in the State of New York, but his family remained behind, —they were removing when Kilburn’s writ was served by attachment of a bedstead, and summons delivered the wife, —it was held that the judgment was void. The defendant was not within the jurisdiction of the Massachusetts court. His domicile and person were in New York. The attachment of an article of his propei’ty could not bind him. It could only bind the goods attached as a proceeding in rem; and the judgment, which was, in that case, by default, cannot be the ground of an action in New York. To bind a defendant personally by a judgment, when he was never personally summoned, would be contrary to the first principles of justice. The New York courts seem now to have understood the case of Phelps v. Holker correctly, as it was. Here is an authority — ■ for what indeed required none, being clear on principle — that proceeding by an attachment against an inhabitant or resident of another State is a proceeding in rem, and binds only to the extent of the thing attached. It cannot be considered as a judgment anywhere else.
The summons in the case at bar, delivered to Ela’s wife at Lebanon, is a nullity; or, in other words, it does not give jurisdiction, or convert that into a personal suit which was a proceeding in rem. The service of process issuing out of the State was void. It gave him notice of a proceeding in rem, and nothing more. It gave no jurisdiction over defendant ; and the jurisdiction over the land was acquired before, i. e. by attaching it. Clearly, if it had not been for the fact of Ela owning land in Vermont, no jurisdiction. This will be admitted. On what principle this? Not that he had no notice; for he had: but that a citizen of New Hampshire cannot be sued in Vermont unless served with process there. *410 It seems implied in Buchanan v. Rucker, 1 Camp. 63, that if Rucker had been served with process (served with process is a technical term — by an officer of Jamaica, in Jamaica, of course), or had defended the action, the judgment would have been good. This means, defendant in Jamaica or had appeared in a suit claiming jurisdiction over him personally. Appearance admits the claim.
Kibbe v. Kibbe, Kirby, 119, was rightly decided, and upon right principles. Defendant was of Connecticut. The service was by attachment of a handkerchief, shown to the officer by the plaintiff’s attorney to be estate of defendant, and actual notice served on defendant in Connecticut. The Court held, that defendant was not within the jurisdiction of the Massachusetts court, and taat the full faith, &e., did-not touch this case.

 This way of considering a judgment good for-some purposes and against some persons only, is not new. See Doug. 1, and notes, Appendix, 6.
A judgment against an executor de son tort cannot be levied on the lands of the deceased, as a judgment against a rightful executor may. Here the judgment is in the same form; at least, the character' of the party defendant is stated in the same. way. 4 Mass. 654; see Gragg v. Starke; 1 Manuscript Reports, 255. See Kirby, 119, to same effect.

 It could not have been the intention of the legislatures of Vermont or New Hampshire to authorize their courts to entertain suits against foreigners, or citizens of other States, to bind beyond the property attached. The very assumption of such a power would draw down on the State assuming it the reprobation of every State in the Union. No State would allow the exercise of it to any but themselves.
When we undertake to say-that the Vermont court had no jurisdiction *411 over tliis party defendant, we apply to the ease the principles of the common law, the general principles of law and justice, the first principles of justice. 5 Johns. 41; 8 Johns. 88. These principles hind us all, as well in Vermont as here. As to what belongs to a nation, independent State, its rights, &c., each must judge for itself, where the national courts have not exclusive jurisdiction by tlic national compact. But each judges not by its own laws, still loss by the laws of the other, hut by the law of nations. It is a national question, how far the legislature or judicial courts of one nation can exercise jurisdiction over the citizens or subjects of another nation or State. These national questions in our national Constitution are confided to the courts of the Union in some cases. Where they are not, each State is a sovereign, a nation. It would be an extravagant construction of the clause of full faith, &c., to suppose that such a surrender [?] was confided to any but the United States, or the State whose subjects are affected by the decision. . Each State judges for itself on national questions. A judgment of another, a foreign tribunal, is, in many cases, conclusive; but it is only where by the law of nations such court judges | '?] by the law of nations, and the law of nations has given their judgments this conclusive quality.

 The foreign attachment is discharged.

 Here it can have no other effect than it has in an information against property. After appearance, the suit goes on as before.
I consider Lawrence v. Smith, 5 Mass. 362, as in point, to show that Vermont court had no jurisdiction except against the land, and that appearance does not give jurisdiction. The defendants were described as of the city of New Torlc. The service was attachment of nominal property, and summons left with defendants’ attorney. Defendants appeared by attorney, and pleaded to the jurisdiction in abatement. Held, the plea was bad; but held, that the Court will not proceed in the suit, as it does not appear that either of the defendants, or any estate of theirs, is within the jurisdiction of the Commonwealth. All further proceedings were stayed. See Tingley v. Bateman and Trustee, 10 Mass. 343. Decision right. Better reasons might have been given.

 The ease would be this: One citizen oí New Hampshire would recover, in the New Hampshire courts, a penalty against another citizen oí New Hampshire ior violation of a Vermont statute; i. e., for a crime committed against Vermont.
For the present, 1 waive the question whether any but a citizen or subject of the offended State can be a common informer. No doubt, a citizen of New Hampshire may be prosecuted for an offence against the Vermont law, committed in Vermont. I have considered the question as to what shall give the Vermont court jurisdiction over the offending party.

 Wheeler v. Peck, 11 Manuscript Reports, 109.

 In a popular action, it cannot be said that any damage is done to the plaintiff in particular. 1 (1. Bacon, 69.

 The distinction is between public wrongs and civil injuries. The *414 latter follow the person. The former are local; none but the courts of the State injured can give redress. 11 Manuscript Reports, 109, 111, 122, 143, 145.
A statute confiscating estates for the part taken in the American Revolution is a penal law. Ogden v. Folliot, in error, 2 Law Mag. 120; 8 T. R. 726.
See 4 Dall. 419 ; 11 Manuscript Reports above, and p. 145.

а) Quaere. May not Treasurer of Vermont interfere? He has no security for his moiety. Could not Bryant compound? Could a New Hampshire court prevent, as Vermont court might have done, and, if the action there, might still perhaps do ?

 Or, perhaps, to make the punishment declared in Vermont effectual, —to assist their courts in the work of punishment.

 If oyor of a record were demandable, defendant might have craved oyer, and demurred, as the objection appears on the face of the record.

ft) It is held, that, if no court of the State has jurisdiction, defendant may avail himself (in a transitory action) of this defence under a plea which goes to the action, Rea v. Hayden, 3 Mass. 24. Semble, the rule is general, whore no court of the State has jurisdiction, then, by the law of the land, the action cannot be maintained, and this may be shown under nil debet.

 The “Recapitulation” and “Result” are on separate sheets. Probably only one of these was used in delivering the opinion. So much of each is printed as purports to state points decided.

 “ And if the defendant, after the service of the process of foreign attachment, should either in person have gone into New Hampshire, or constituted an attorney to defend the suit, so as to protect his goods, effects, or credits from the effect of the attachment, he would not thereby have given ' the court jurisdiction of his person ; since this jurisdiction must result from the service of the foreign attachment. It would he unreasonable to oblige any man living in one State, and having effects in another State, to make himself amenable to the courts of the last State, *417 that he might defend his property there attached.” Parsons, C. J., in Bissell v. Briggs, 1813, 9 Mass. 462.
“ Chief Justice Parsons, in the case of Bissell v. Briggs, supposes that where proceedings were instituted by process of attachment in one State, against the property of a citizen of another, he might appear in person, or by attorney, to defend his property, without thereby giving the court jurisdiction of his person. The court would not, in such a case, I concede, have jurisdiction over his person for any other hut the direct objects of the proceedings; and, as far as those were concerned, he would be subjected to the authority of the court. If a citizen of one State should go into another, to claim property seized on attachment, and subject the attaching creditors to costs and expenses which, in the due course of proceedings, should be adjudged to them by a court of competent authority, will it be pretended that he could resist the payment of those costs and expenses, on the ground that he was not subject to the jurisdiction of the court? Por all the fair and direct objects of the suit, he was within its jurisdiction. So, if the proceedings were not in rem, but the property of the defendant was attached, to compel him to appear and answer to proceedings in personam, and ho did, in fact, appear and litigate the cause with the plaintiff, he could not he heard to question the jurisdiction of that court over his person. I do not think Chief Justice Parsons intended to say more than this : that, when a court had the jurisdiction of the person of a defendant for one purpose, it could not legally bind him by a judgment or sentence in a distinct and different matter.” Marcy, J., in Starbuck v. Murray, 1830, 5 Wend. 148, 159, 160.
“And he” (Parsons, C. J.) “further held, that if the defendant had appeared to the attachment, it could not have given the court of New Hampshire jurisdiction of his person.”
“ On this last point Judge Parsons was probably mistaken. The attachment is a mode by which to compel/the appearance of the defendant, and if he do appear, and contests the validity of the claim, there seems to be no reason why he should not be bound, in personam, by the judgment.” Lincoln v. Tower, 1841, 2 McLean, 473, 482.
“ Chief Justice Parsons, in Bissell v. Briggs, goes so far as to intimate that, even should the defendant appear in the attachment suit, this does not give jurisdiction to the court to render against him a judgment in personam, which would bind extra-territorially ; but this cannot now he maintained. ” Whart. Confl. Laws, § 830, n. y.
In Noyes v. Butler, 1849, 6 Barb. 613, 620, Paigr, P. J., understands Parsons, C. J., as asserting that a general appearance by the non-resident defendant “ should be deemed an appearance merely to protect the property attached; and that he did not, by such appearance, give the court . . . in New Hampshire jurisdiction of his person.”
There may, of course, be essential differences, both in the form of entering appearances, and in the nature of the pleas filed, on the part *418 of non-resident defendants, as indicated in the following hypothetical cases:—
1. A non-resident defendant, whose property has been attached without personal service on' him, appears and pleads to the merits, without objecting to the j urisdiction.
A judgment in personam, rendered against him under this state of facts has repeatedly been held enforceable in other jurisdictions. See, for instance, Mayhew v. Thatcher, 1821, 6 Wheat. 129; Shumway v. Stillman, 1831, 6 Wend. 447; Blyler v. Kline, 1870, 64 Pa. St. 130; Perley, J., in Downer v. Shaw, 1851, 22 N. H. 277, 281.
In Noyes v. Butler, 1849, 6 Barb. 613, 620, Paige, P. J., inclined, as matter of principle, to the opposite view, but felt bound by the authorities. See also Platt, J., in Pawling v. Bird’s Ex’rs, 1816, 13 Johns. 192, 207.
.2. The defendant appears specially for the sole purpose of objecting to the jurisdiction; and appears no further after that question is decided against him.
According to Wright v. Boynton, 1858, 37 N. H. 9, such a restricted appearance will not give to the court jurisdiction of the person, if they had none before. (But the objection to the jurisdiction is held to be waived, if the defendant, at the same time, submits to the court any other objection. Merrill v. Houghton, 1871, 51 N. H. 61, and cases there cited.)
In Bigelow on Estoppel, 2d ed., p. 203, it is said : “ It is probable that if there had been issue raised between the parties upon this point ” (jurisdiction),- u and this issue had been decided in favor of the jurisdiction, the decision in this particular would bar a re-trial of the question. And this, too, though it should be conceded that the defendant’s appearance, being merely entered to test the question of jurisdiction, had not, per se, given the court jurisdiction to try the merits of the cause.” But see the imperfectly reported ease of McNab v. Bennett, 1872, 66 Ill. 157; and Toledo, W., and W. Railway Co. v. Reynolds, 1874, 72 Ill. 487.
In Bryant v. Ela, it might, perhaps, have been argued that the defendant’s first plea impliedly admitted the jurisdiction of the court, in case the property attached was proved to be his; and that therefore the finding against him on the issue of ownership estopped him'from subsequently denying the jurisdiction.
3. The defendant appears and objects to the jurisdiction. This objection being overruled, he then pleads.to the merits. This was the case in Bryant v. Ela.
Quaere, whether the defendant would have been in a better position to deny the validity-of the judgment, if his plea to the merits had been filed under protest, with an express reservation of all previous objections. See Coleman’s Appeal, 1874, 75 Pa. St. 441.
4. The defendant aslrs leave to appear specially for the sole purpose of *419 protecting his property; i. e., to prevent the,rendition of a judgment binding his attached property.
If this leave is granted, would such a limited appearance give jurisdiction of the defendant’s person? And, if a judgment for the plaintiff would not be binding on the defendant personally, how far would a judgment for the defendant be binding on the plaintiff by way of estoppel? Suppose an action of contract is brought to recover an alleged claim of $1,000. Property attached, valued at $100. Defendant has leave to appear specially to prevent judgment against the property attached. He sets up a defence which goes to the merits of the entire claim. Issue is joined, and found for the defendant. What judgment shall be entered? Will the judgment estop the plaintiff as to the whole ten-tenths of his demand, if the defendant ran the risk of losing (by an adverse decision) only one-tenth of the amount? Perhaps some provision as to the form and effect of the judgment should be inserted in the order of court granting leave to enter the special appearance.
If leave to enter a limited appearance is refused, and the defendant then, under protest, pleads to the merits, is a subsequent judgment in .personam binding on him in another State ? That a voluntary appearance confers jurisdiction of the person is elementary. But the defendant would argue that his appearance was not “ voluntary,” pleading to the merits being the only method left to defend his property attached. The plaintiff, 'on the other hand, might argue that the defendant ought not to be permitted to take his chance of obtaining a judgment which would be conclusive against the plaintiff as to the entire cause of controversy, without subjecting himself to the rendition of an adverse judgment, equally far-reaching in its results as against himself._
As to the second point decided in Bryant v. Ela, that case is in direct conflict with Healy v. Root, 1831, 11 Pick. 389. In Spencer v. Brockway, 1824, 1 Ohio (Hammond), 259, a suit was maintained in Ohio upon a judgment rendered in Connecticut, in favor of the State treasurer, “ on a bond of recognizance.” In State of Indiana v. Helmer, 1866, 21 Iowa, 370, a suit was maintained in Iowa upon a judgment rendered in Indiana under the Indiana bastardy statute.