ALBANY,
August, 1806.

Jackson
v.
Jackson.

## Nancy Jackson *against* Archibald Jackson.

A citizen of this state married a wife in this state, and after living together for more than a year, the wife left her husband, and went into the state of *Vermont,* and there obtained a divorce under the laws of that state, on the ground of ill treatment and severe temper, and then returned to this state where she has since resided. In an action brought by the wife against the husband for *alimony,* adjudged to her by the decree of the court in *Vermont,* which granted the divorce, it was held, that the domicil of the party was not changed by her going and residing in *Vermont*; that such conduct was an evasion of the law of this state, which does not allow of a divorce, except for adultery ; and that no action could be maintained on such a decree.

THIS was an action on the case, brought on a judgment or decree of the supreme court of judicature of the state of *Vermont*. Plea *non assumpsit*.

The cause was tried at the circuit held at *Albany,* the 17th *October,* 1805, before Mr. Justice *Thompson*. The plaintiff produced a copy of the decree of the supreme court of *Vermont,* duly authenticated, by which it appeared, that the plaintiff had exhibited a petition to that court, stating her

marriage with the defendant, of *Canaan*, in the county of *Columbia*, in this state, on the 21st *September*, 1800; and that on account of the ill treatment and abuse she received from the defendant, who beat her, and threatened her life, and his severity of temper, it was impossible that she could live with him, &c. praying a divorce. On the 1st Tuesday of *February*, 1803, the court decreed as follows : " upon hearing the allegations in the said petition contained, and the evidence adduced in support thereof, and the arguments of counsel ; It is considered by the court here, that the prayer of the said *Nancy's* petition be granted, and that the said *Nancy* be divorced from all and singular the obligations she is under, by virtue of the marriage covenant between her and the said *Archibald ;* and it is further ordained, adjudged and decreed, that the said *Nancy* do have and recover of the said *Archibald* fifteen hundred dollars, for her *alimony*, of which she may have execution."

It was proved on the part of the defendant, that he and the plaintiff were lawfully married at *Canaan*, in this state, in *September*, 1800 ; that they lived together until the winter of 1802 ; that in *October*, 1802, the plaintiff went to *Vermont*, and declared, at the time, that she went there for the purpose of obtaining a divorce from her husband ; that in the month of *April*, 1803, she returned to *New-York*, and has ever since resided within this state. It appeared also, that the defendant was a citizen of this state ; that both parties before their intermarriage were inhabitants of this state, and have continued to reside here, except the plaintiff, for the time she was absent in *Vermont*. The present action was brought to recover the sum decreed for alimony by the court of *Vermont*, and a verdict was taken by consent for the plaintiff, subject to the opinion of the court on a case, containing the above facts. It was agreed that the printed laws of *Vermont*, should be read, on the argument, as the laws of that state.

*Woodworth*, attorney-general, for the plaintiff. If the court had not already decided, that a judgment in another

* 1 *Caines,* 460.
*Hitchcock &*
*Fitch* v. *Aicken.*

state was not conclusive, I should feel disposed to question that doctrine.

[*Court.* That question is settled.*]

The decree, then, is *prima facie* evidence of the plaintiff's right to recover. It cannot be impeached unless for some irregularity.

[*Court.* It appears from the case that the judgment was regular. That point need not be argued.]

It is contended, then, that the court of *Vermont* was competent to pronounce the decree; and that the plaintiff, is entitled to have the full effect of it here. The parties were before a court, in another state, having power to decree divorces. There is no objection of any want of jurisdiction, or of any irregularity in the proceedings of the court. There is nothing, therefore, in this case, to distinguish it from any other action on a judgment or decree of a foreign court, for the payment of a certain sum of money.†

† See 3 *Caines,*
22.
*Post & La Rue*
v. *Neafie.*

*H. Bleecker,* for the defendant. This, if not a difficult, is certainly a new case, and involves a question of great importance to the laws of this state, and to the interests of its citizens. The parties were inhabitants of this state; and the contract of marriage was made and solemnized here. The question is, can a court of another state, or of a foreign country, dissolve a marriage contract under such circumstances? or will this court lend its aid to give effect to such a decree of a foreign tribunal? By the law of this state, no divorce can

‡ Laws of *N.* 1.
Vol. 1. p. 94.

be obtained except for *adultery*.‡ In *Vermont* divorces are granted for slight causes, as ill treatment and bad temper. Here is a *conflictio legum,* and it remains to be decided, whether, in a matter of so much consequence to the morality and happiness of the people, we are to be governed by the laws of another state, or by those of our own. The municipal law of a state does not extend beyond its territory, and has authority only over its own citizens or subjects.

§ *Just. Inst.* 1.
2. 1.
1 *Bl. Comm.* 43.
*Huberus, lib.* 1.
*tit. iii. n.* 2. *de*
*conflictu legum.*

*Jus civile est quod sibi populus constituit.*§ It is true, that *Huberus,* in his second axiom, classes all those who are within the territory, whether their residence be temporary or permanent, as subjects; but this must be understood only

in relation to the general laws made for the preservation of good order, and which have no relation to the title of citizen or subject, properly speaking.* A citizen or subject who absents himself for a time, without any intention to abandon his country, does not lose the character or privileges of a citizen.† The permanent inhabitants, and native citizens, are always distinguished from strangers, or temporary residents.‡ It is the *domicil*, or fixed habitation that makes a person a subject or a citizen.§ Foreign laws, judgments, or decrees, have no authority *extra territorium.*\* Now the *domicil* of these parties was fixed, and always continued, in the state of *New-York.* The defendant did not go into *Vermont;* and the plaintiff went there avowedly for the purpose of evading the laws of this state; she was not even there at the time the petition was presented, and though absent a few months, she has returned and resided in this state ever since. The law of *Vermont,* at that time, did not require even a residence of either party, in order to obtain a divorce. The domicil of the husband is the domicil of the wife. While the marriage contract continues, the wife can never be supposed to have a different domicil from that of her husband. Even had the husband gone into *Vermont,* his temporary residence there, while he had the *animus revertendi,* would not be considered as changing his *domicil.*‡ Will this court, then, sustain, or give effect to the decree of a foreign tribunal, dissolving a contract of marriage between citizens of this state; a decree repugnant to the policy and morality of our own laws? In what cases is the *lex loci* to govern, and how far have the courts of one country, carried their courtesy, in giving effect to the decrees of the court of another country? Though a general principle of convenience, in regard to the intercourse of mankind, has produced the general rule respecting the *lex loci;* yet every writer on this subject admits, that where the laws of one country are injurious to another, are repugnant to *morality* or *policy,* or are attended even with *inconvenience,* they are not to be considered as valid within a different jurisdiction;

ALBANY,
August, 1806.

Jackson
v.
Jackson.

* *Vattel,* liv. 2. ch. 8. §. 101.
† *Vattel, ibid.* § 107.
‡ *Vattel, liv.* 1. ch. 9. §. 212. 213.
§ *Vattel, ibid* §. 217, 218
\* *Kaimes' prin. of Equity, vol.* 2. p. 312. 354. 366. *Erskine's Institute of the laws of Scotland,* book 1. tit: 2. n. 16—18 *et sequ.*

‡ 2 *Bos. & Puller,* 229. *March* v. *Hutchison. Bruce* v. *Bruce,* in a *note.* See also 3 *Dallas,* 133 to 169 as t *expatriation.*

ALBANY,
August, 1806.

Jackson
v.
Jackson.

* *Huberus, lib. 1.
tit.* 111. *Er-
skine's Institute,
vol.* 2. *p* .474,
581, 735, 786.
*Kaimes'
Prin. of Equ. b.*
3. *ch.* 8. *sec.* 1, 2,
3, 4. *Rolles' Ab.*
43. *Hargrave's
Co. Litt.* note,
206. *a.* 2 *Bur-
rows,* 1077. 4
*Term,* 189.
2. *Henry Black.*
402. 3 *Term,*
454. 4 *Term,*
466. 3 *Bos. &
Pul.* 38, 39.
1 *East,* 6.
1. *Cooke's B. L.*
176. *Loft* 1.
*Somerset* v.
*Stewart.*
‡ *Hargrave's
Co. Litt.* 79. *b.*
note. *Buller's
N. P.* 113. 2 *H.
Blk.* 145. *Ilder-
ton* v. *Ilderton.*
§ See the opin-
ion of *C. Baron
Eyre.* 2 *H. Blk.*
410.

¶ *Sandius, apud
Huberus, lib.* 1
*tit.* 111. § 7.
*Kaimes' Prin.
of Equ. b.* 3. *ch.*
8. *sec.* 6. See
also, 1 *Caines,*
412. *Nash* v.
*Tupper. On that
principle, this*

The cases on this point, to be found in the books, are nu-merous; they relate to *marriages, wills, bankruptcies, re-venue, slaves,* and concern *religion, morality* or *policy.*\* Hu-berus considers the case of young persons going from *Holland* into *Friesland,* to sanction their illicit intercourse, by a mar-riage there, without consent of curators or guardians, and re-turning again to *Holland,* as a fraud and evasion of the law; and that such marriages are not valid.(*a*) So if a *Frisian* mar-ries his brother's daughter in *Brabant,* and returns, the mar-riage is void.(*b*) But we shall probably be told of the *Scotch* marriages, and the decisions which have taken place in re-lation to them: but the court will recollect the history of those marriages, and the diversity of opinions which have been entertained as to their effect.‡ A reference to the au-thorities cited, will show how this rule about the operation of the *lex loci* has been limited. The cases in which it has been allowed, have arisen either from *comity* or *necessity;* and re-late to objects harmless or innocent, and which can be atten-ded with no inconvenience or injury. Such are the cases in regard to *interest, bills of exchange, forms of oaths,* &c. The warmest advocates in support of the decisions of foreign courts, admit, that if the party claiming the benefit of the judgment of such courts, applies to the courts of his own country to enforce such judgment, it is completely open to examination, and subject to the laws of the latter place.§ In *executione sententiæ alibi latæ, servare jus loci in quo fit executio, non ubi res judicata est.*¶ The party by bringing his action on this judgment, before a court of this state, has submitted to its laws, and the rules of decision adopted here.

Again, there is a material difference between giving ef-fect to the law of another country, when it is in support of

*court decided, that where a party sues in this state on a contract made in another state, our statute of limitations, is a good plea in bar, though there be no such prescription in the state where the contract was made.*

(*a*) *Ego ita existimo, hanc rem manifesto pertinere ad eversionem juris nostri ac ideo non esse magistratus heic obligatos, è jure gentium, ejus modi nupti as agnoscere et rata*s *habere: Multoque magis statuendum est, eos contra jus gentium facere videri qui civibus alieni imperii sua facilitate jus patriis legibus contrarium, scientes volenter impertiuntur. Hub. lib.* 1. *tit.* 111. *n.* 8.

(*b*) *Si Frisius cum fratris filia se conferat in Brabantiam ibique nuptias celebret, huc reversus non videtur tolerandus; quia sic jus nostrum pessimis exemplis eluderetur. Hub. lib.* 1. *tit. III. n.* 8.

a just and *bona fide* contract, and when it is to destroy such contract, or discharge the parties from its obligations. If the court will not allow the discharge obtained by a debtor under the bankrupt or insolvent laws of another state, to defeat the right of his creditor on a contract made here,[*] *a fortiori*, they will not permit so important and sacred a contract as that of marriage to be dissolved by the laws of another country, while the parties remain citizens of this state. There cannot be a stronger case for excluding the operation of the *lex loci*. It is unnecessary to dwell on the importance of the marriage contract, and its extensive effects on all the various relations of society. If this decree be sustained, the consequence will be, that we shall be governed by the laws of *Vermont*, instead of our own state; but, *magis est in tali conflictu ut jus nostrum quam jus alienum servemus*.[†] If, however, we are bound implicitly to adopt the decrees of the courts of *Vermont*, and to give them effect within this state, the marriage ties, which should be permanent and indissoluble, except by death, or the criminality of either party, may be broken for the slightest cause. The wife may elope and be divorced before the husband can know where she is, or have it in his power to reclaim her. The laws of *Vermont* to-day, authorise divorces for ill treatment, and severity of temper; to-morrow, they may adopt the Roman law, and grant divorces, because the wife had been at a play, or been seen in the street with her head uncovered. The consequences, too, not only as to the peace and happiness of families, but as it respects the rights of property, in the husband, and the interests of creditors, which must be affected by a divorce, deserve serious consideration.

Notwithstanding the political compact that connects the *United States* as a federal republic, the several states must be considered as distinct and independent sovereignties, governed by different laws and customs. The reputation and prosperity of this state is greatly owing to its being governed by that excellent system of English com-

ALBANY,
August, 1806.

Jackson
v.
Jackson.

[*] 3 *Caines*, 154.
*Vanraugh* v.
*Vanarsdaln.*
1 *East*, 6.
5 *East*, 125.

[†] *Huber. loc.*
*cit. n.* 11.

* *Laws of N.
Y. vol. 1. p. 166.
Kirby's Rep.
119.*

mon law, adopted by our ancestors, and to the wise and regular administration of justice connected with it. Every attempt to subvert this system, ought to be discountenanced. Every violation of the independent jurisdiction of the state, ought to be resisted; for the service of process, and notices, issuing from the courts of another state is an infringement of the jurisdiction of this state.*

*Woodworth*, in reply. I shall not controvert the principles or authorities which have been adduced on the other side, with so much learning and ingenuity. It is sufficient to show that they do not apply to the present case. It seems to have been attempted to prove, that the rights and incidents of marriage are *local*, and do not accompany the parties wherever they chuse to reside. But there is nothing so peculiar in the nature of this contract, as to render it perpetually subject to the law of the place where it was originally made. Suppose the case of parties married in *France*, and that by the laws of that country, the contract could not be dissolved for any cause whatever,† and they should afterwards come to reside here, and be made citizens under the naturalization law; will it be contended that if either of them commit *adultery* in this state, that a *divorce* cannot be granted, merely because no divorce would have been allowed in *France*? On the contrary, this contract is emphatically *personal*; its rights are to be enjoyed and its duties performed wherever the parties happen to reside. Whenever they change their residence, they carry with them the contract with its incidents, which is thus transitory, and subject to the laws of the place where the parties are found. It is not denied, that if the court of *Vermont* had pronounced this decree, without having the parties before them, it would be void. But it appears by the exemplification of the record, that the parties did appear before the court by counsel. The *domicil* of the parties, is immaterial. It is sufficient that they were within the jurisdiction of the court; for so it must be intended from the record.

† This was the
law in *France*,
before the re-
volution. See
*Pothier Traite
du Contrat de
Mariage. Part
6. ch. 1. art. 1.*

Again, the statute of this state does not exclusively confine the cause of divorce to the fact of adultery. It is not prohibitory, but provisory. Every state may make such laws as may be thought best, and the persons found within its jurisdiction will be subject to them. Different countries admit different causes of divorce.‡ There is nothing in the natural or revealed law that prohibits divorces. If this decree militate against any statute or law of this state, or against *religion, morality*, or *policy*, or is *injurious*, to society, it will not be entitled to the aid of this court to carry it into effect. If the cause of divorce should at any time appear to be trivial or improper, as has been supposed, the courts of this state will not be bound to sanction it. It will be sufficient, however, to decide upon such a case, whenever it arises. Though this be not a case of *adultery*, yet the causes of divorce are such as would justify the separation of the parties, at least, if not a dissolution of the marriage contract. If the court should be of opinion that there were sufficient grounds for a divorce a *mensa et thoro*, they may support this decree so far as to permit the plaintiff to recover *alimony ;* for a decree may be affirmed in part, and reversed in part.‡

SPENCER, J. delivered the opinion of the court. After stating the facts in the case, he proceeded :

The laws of *Vermont* are to be considered as part of the case ; it appears that the supreme court of that state, had jurisdiction given to them, by a statute of the 28th of *February*, 1797, to grant bills of divorce, for several enumerated causes, among which is intolerable severity, and to allow alimony. By another statute, passed the 12th of *November*, 1802, it is provided, that no bill of divorce shall be granted, unless one of the parties has resided within that state one year previous to the granting of such divorce ; the latter act was not to take effect, until from and after the first day of *February* succeeding its enactment. By a reference to the calendar of the year 1803, it appears that this decree was pronounced on the first day of *February*, 1803. By the terms of the last statute that day is excluded, so that the

ALBANY,
August, 1806

Jackson
v.
Jackson.

‡ *Montesquieu,*
*liv.* 15. *ch.* 14,
15.

‡ 2 *Bac. Ab.*
288.

broad question arises, whether the judgment in this case, under the circumstances attending it, can be deemed obligatory on the defendant, so far forth, as to sustain the present action.

The case of *Hitchcock & Fitch* v. *Aicken*,[*] must, as respects this court, be an authority for saying, that a judgment obtained in a sister state, is liable to be impeached in a suit brought on it here, notwithstanding there may have been a full and a fair trial in the original suit. And so far it quadrates with this case, for here the defendant appeared, and made his defence; and thereupon the court in *Vermont*, pronounced the decree in question.

The case being thus open for examination, the question at once arises, how far this court will lend its assistance to carry into effect, between its own citizens, a judgment of a foreign court, where the plaintiff has resorted to that court, with the avowed object of gaining relief, in a case not provided for by our laws, and against the policy of them. I say against the policy of our laws, because our own legislature having authorised divorces but in one case, intolerable severity of treatment does not warrant a divorce. In delivering the judgment I have formed in the present case, it is not to be understood, that I mean to impugn the principle, that proper deference is due to the decisions of the courts of justice in a neighbouring state, in a case properly before them, and when they do not encroach on the rights of other states.

We are not called on in the present case, to pronounce on the legal effect of the divorce granted by the supreme court of *Vermont*. Here is a plain attempt by one of our own citizens, to evade the force of our laws. The plaintiff, to obtain a divorce, which our laws do not allow, instituted her proceedings in *Vermont*, whilst she was an inhabitant and an actual resident of this state, and while her domicil continued within this state; for she was incapable, during her coverture, of acquiring a domicil distinct from that of her husband.[†] The plaintiff having acted with a view of evading our laws, it would be attended with pernicious consequences, to aid this attempt to elude them.

[* 1 *Caines*, 460.]

[† 5 *Ves.* 787.]

It may be laid down as a general principle, that when ever an act is done in *fraudem legis*, it cannot be the basis of a suit, in the courts of the country whose laws are attempted to be infringed. The cases of *Briggs & Lawrence*,* and *Clugas & Penaluna*† support this opinion, without going beyond the point now submitted. The court are, therefore, of opinion that judgment must be given for the defendant. .

ALBANY,<br>August, 1806.

* 3 *Term,* 454.<br>† 4 *Term,* 466.

Judgment for the defendant.