# CASES

# SUPREME JUDICIAL COURT

FOR

## THE COUNTY OF WALDO, JULY TERM, 1832.

---

## ᴸAGE *vs.* *The Inhabitants of* FRANKFORT.

A collector of taxes, who had sold the lands of a delinquent nonresident pursuant to law, was sued by the purchaser, on the covenant in his deed that the taxes were legally assessed, whereas in truth they were not, for which cause he had lost the land; and judgment having been rendered against the collector, the execution was satisfied by extent upon his land. Soon afterwards the town voted to indemnify the collector; and after the lapse of a year, he repurchased the land. In an action against the town on the vote of indemnity, to which the statute of limitations was pleaded, it was held that the damage was sustained by the extent, and that the statute began to run from the passage of the vote, and not from the expiration of the right of redemption.

It was also held, that though the vote was entered on the town records, and was attested by the clerk, yet it was still within the operation of the statute.

Whether a vote by a town to indemnify a collector of taxes for damage which he had previously sustained in consequence of an illegal assessment of taxes, is supported by a sufficient consideration, and constitutes a binding contract,— *quære.*

THIS action, which was *assumpsit*, was commenced Feb. 17, 1830. The plaintiff declared that he was duly chosen collector of taxes for the town of *Frankfort*, for the year 1798; that the taxes for that year were assessed and committed to him for collection;

that in the legal course of collection he sold the lands of certain delinquent nonresidents to one *Stubbs*, at public vendue, *Jan.* 6, 1800; that he gave a deed thereof to *Stubbs*, *Jan.* 21, 1800, inserting, at the request of the defendants, through the assessors, a covenant that the taxes were legally assessed and the lands legally sold; but that in fact the assessment proved to have been illegal; for which cause the proprietors entered and ousted *Stubbs* from the lands; that *Stubbs* thereupon sued the plaintiff upon the covenants in his deed, and had judgment against him for the illegality of the assessment, in this court at *June* term, 1823; [see *Stubbs v. Page*, 2 *Greenl.* 378,] amounting to $356 98, and extended his execution on the plaintiff's lands in full satisfaction thereof, *July*, 21, 1823; that on the 8th of *Sept.* 1823, the town of *Frankfort* promised and voted " to indemnify the plaintiff for the amount of the execution obtained against him by *Stubbs*, and for the money-expense incurred by the plaintiff in maintaining the lawsuit in which said execution was obtained;" and that a similar promise was made *Jan.* 29, 1824; but that the plaintiff had not been indemnified; but on the contrary was obliged, in order to redeem his land, which he did on the 12th of *Sept.* 1825, to pay three hundred dollars.

The defendants pleaded the general issue, and the statute of limitations; and the cause being referred to a commissioner by consent of parties, to ascertain and report a statement of facts, he made a report containing the principal facts alleged in the declaration. The evidence of the promise stated to have been made *Jan.* 29, 1824, consisted in a petition of the selectmen of *Frankfort* to the legislature, reciting the circumstances of the case, and the vote of the preceding *September*, and praying for authority to the town to raise and assess money for the purpose of indemnifying the plaintiff; upon which a resolve of the above date was passed accordingly.

*Greenleaf* argued for the plaintiff, that as the promise was merely for indemnity, no action would lie till he had sustained actual damage; and this was not till he was obliged to pay money to relieve his land; or, at the earliest, till the title passed out of him, and became absolute in *Stubbs*, at the expiration of a year from the extent.

If the statute of limitations began to run from either of these dates, the action was commenced within six years.

It was the duty of the town, by its assessors, to deliver to the collector bills of taxes legally raised and assessed; and it may be considered as being under an implied contract to that effect. And corporations are bound by implied *assumpsit* in all cases of duties imposed by law, or of benefits conferred. 2 *Kent's Com.* 243, 235; *Bank of Columbia v. Patterson,* 7 *Cranch.* 299; 1 *Pick.* 297; 14 *Johns.* 118; 8 *Pick.* 178; 7 *Greenl.* 76, 118. The express promise was therefore upon good and sufficient consideration. *Nelson v. Milford,* 7 *Pick.* 18.

But if the statute began to run from the vote of *Sept.* 8, 1823, yet the action is saved;—first, because the promise, being on the records of the town, is proved by evidence of as high a nature as is necessary in the conveyance of real estate; which may be granted by vote alone; and thus is equivalent to a promise under seal;—and secondly, because the transactions of the meeting, being attested by the town clerk, the promise is duly witnessed, and so not within the statute.

*W. Crosby* argued for the defendants, and cited *Norton v. Mansfield,* 16 *Mass.* 48; *Dillingham v. Snow,* 5 *Mass.* 547. He also read an argument by *Sprague,* who was attending his duties as Senator in Congress from this State, and who argued that the vote was without sufficient consideration, and was not binding, and cited *Comstock v. Smith,* 7 *Johns.* 87; *Bosden v. Thinne, Yelv.* 41, *note* 1; 3 *Bos. & Pul.* 252, *note; Haliburton v. Frankfort,* 14 *Mass.* 214; *Stetson v. Kempton,* 13 *Mass.* 272; *Mills v. Wynman,* 3 *Pick.* 207; *Bussey v. Gilmore,* 3 *Greenl.* 191.

MELLEN C. J. delivered the opinion of the court at an adjourned session in *Cumberland,* in *August* following.

This case presents two questions for consideration. First, did the vote of indemnity, passed *September 8th,* 1823, constitute a legal contract with the plaintiff, rendering the defendants liable to him for the amount of an indemnity against *Stubbs's* judgment and the

expenses incurred in defending his action? If so, then, secondly, is the plaintiff's action barred by the statute of limitations? Admitting for the present, that the first question is entitled to an affirmative answer, we will proceed to the examination of the second.

By the report of the commissioner it appears, that *Stubbs* recovered his judgment at *June* term, 1823, and that on the 21st of *July* following he caused his execution to be satisfied in full, by a levy on the real estate of the plaintiff. It further appears that the present action was commenced on the 17th of *February*, 1830, which was more than six years next after the completion of the levy, though less than six years next after the right of redemption expired; and less than five years after *Stubbs* received $300 of the plaintiff, and, in consideration thereof, released the premises to him. On these facts, the inquiry is, when did the plaintiff's right of action against the defendants accrue? Certainly not till the vote was passed, on the 8th of *September*, next following the levy. If it accrued then, the action is barred; for it cannot be contended that a promise, made by a town is not barred, in the same circumstances in which a promise made by an individual would be. Towns can make express contracts, only by vote; still, the contract is but a simple contract, and is governed by those principles, which govern all such contracts, in regard to the statute of limitations. It is urged by the counsel for the plaintiff that his right of action did not accrue until the payment of the $300, and the release of the title by *Stubbs;* but as this was after the right of redemption had expired, the transaction can be considered only as a purchase, and not as a redemption; for the judgment, satisfied by the levy, amounted to $356,98. It is next urged that the right of action did not accrue till the expiration of one year next after the levy; but the answer to this argument is, that the plaintiff's title to the premises levied upon was by the levy, devested and transferred to *Stubbs*, subject to the right of redemption, which right was never exercised; so that the execution was completely satisfied, by and at the time of the levy. At that time he was damnified to the amount of the execution; and even if he had redeemed the land the day before the right of re-

demption expired, by paying the amount of the execution and costs, such payment would be only substitution money for land, but would not increase or diminish the amount of his loss or his indemnity. Whatever cause of action he had, grounded on the vote of *September* 8, 1823, accrued on that day; because, prior to that day, namely, on the day of the levy, the damage was sustained, to indemnify him against which, the vote was passed.

In this view of the cause, it is evident that the action cannot be maintained. We have omitted the consideration of the first question above stated, because our opinion on the second, disposes of the cause. Some of the objections which have been urged by the defendant's counsel as to the first question, seem to present doubts and difficulties; but we do not mean to intimate any opinion concerning them, or what might be our judgment, provided the action were not barred. A nonsuit must be entered.